**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 4-28-2022**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * *
                                    *
      JOSEPH MCCOY                  *
                                    *   20-cv-362-JL
              v.                    *   September 17, 2021
                                    *   10:15 a.m.
      TOWN OF PITTSFIELD            *
                                    *
* * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

APPEARANCES:


For the Plaintiff:          Robert M. Fojo, Esq.
                            Fojo Law, PLLC




For the Defendant:          Robert Joseph Dietel, Esq.
                            Gallagher Callahan & Gartrell PC




Court Reporter:             Susan M. Bateman, RPR, CRR
                            Official Court Reporter
                            United States District Court
                            55 Pleasant Street
                            Concord, NH 03301
                            (603) 225-1453

```
1                    P R O C E E D I N G S
2              THE CLERK:  Court is in session and has for
3    consideration a motion hearing in Joseph McCoy versus the Town
4    of Pittsfield, New Hampshire, civil case 20-cv-362-JL.
5              Will counsel identify themselves for the record
6    beginning with counsel for the plaintiff?
7              MR. FOJO:  Good morning, your Honor.
8              Robert Fojo for Joseph McCoy, the plaintiff, and
9    Mr. McCoy is signed on as well.
10             THE COURT:  Good morning, Mr. Fojo.
11             Good morning, Mr. McCoy.
12             MR. DIETEL:  Good morning, your Honor.
13             Robert Dietel for the Town of Pittsfield.
14             And through Cara Marston I believe we have the town
15   administrator and also Carl Anderson watching and one of the
16   board of selectmen.
17             THE COURT:  Yeah, I can see Administrator Marston
18   on the screen here.  I can see her square, yeah.
19             Okay.  Look, I've read your submissions.  This is a
20   difficult situation.  There's just a lot of talking past each
21   other going on and a lot of real confusion over what the
22   claims even are.  I'm struggling with it, to be honest, so I'm
23   asking questions today, but I'll do my best to kind of hack
24   through it.
25             Let me get some preliminaries out.  This is a --
```

1    first, it's a factual question.  June 2017 the minutes say he

2    got an extension on the trailer, but he got an actual permit.

3    He got a new permit.

4             So was he granted a new permit or was he granted an

5    extension?

6             MR. DIETEL:  Your Honor, I think it's a distinction

7    without much meaning.

8             THE COURT:  You're probably right, yeah.

9             MR. DIETEL:  He got approved to continue to keep

10   the trailer on the property.  He got that two times.  One in

11   2016 he got it, and he got it again in 2017, and then he gets

12   denied in 2018 on another third request.

13            THE COURT:  So your view is it doesn't really

14   matter?

15            MR. DIETEL:  Yeah.  I mean, we don't run away from

16   the fact, your Honor, that the ordinance which Attorney Fojo

17   makes much of says that it's for a 12-month period of time.

18            THE COURT:  Yep.

19            MR. DIETEL:  We think that that argument actually

20   totally undercuts Mr. McCoy's claims.

21            THE COURT:  Yeah, I'm not getting into your

22   argument yet.  I'm just trying to understand what happened.

23            Mr. Fojo, do you agree with that?  The minutes say

24   there is a new permit.  Do you agree with Mr. Dietel that this

25   doesn't make much difference?  In the scheme of things, it

1    doesn't make a difference?

2            MR. FOJO:  I don't think it makes much of a

3    difference for a variety of reasons which we've articulated.

4    So I'll leave it at that.

5            THE COURT:  Okay.  Fair enough.

6            Now, neither of you spent any time -- you know,

7    this is a suit against the town.  It's not against Ms.

8    Marston.  It's not against the board.  It's against the town.

9    And so -- it's a Monell claim.

10            Do you concede, Mr. Dietel, that since it's a vote,

11    since it's an official town action that there's no reason to

12    dispute that?

13            MR. DIETEL:  Yeah, your Honor.

14            You know, I had thought about raising that.  We've

15    got a vote from the board of selectmen that makes the

16    determination.  I think the case law is clear that's a town

17    decision.

18            THE COURT:  I think you're right.

19            MR. DIETEL:  But it dovetails into my ripeness

20    arguments to some extent, and, you know, we'll touch on that

21    later I suppose.

22            THE COURT:  Sure.  You mean like your exhaustion?

23            MR. DIETEL:  Yeah.  I mean, we've got an argument

24    that the town has discriminated, and the town makes a final

25    decision here when there's an appeal to the ZBA of the

1    determination.

2              THE COURT:  Okay.

3              MR. DIETEL:  But that never happened.  We don't

4    have allegations -- the individual board of selectmen are not

5    named.  Even the individual board itself is not named.  It's

6    the town that's named.

7              THE COURT:  Okay.  Now, this one might help me

8    narrow things a bit.  Count 1 appears to argue by the

9    complaint that the ordinance as applied by the town is

10   content-based and viewpoint-based restriction.

11             Neither of you really engaged that in the summary

12   judgment papers and I think that's because -- if I understand

13   Mr. Fojo's argument correctly now, it's not that the ordinance

14   is content-based or viewpoint-based.  Instead, the ordinance

15   -- which Mr. Fojo says shouldn't apply to his trailer anyway,

16   right, but instead -- it's impermissibly applied as a matter

17   of vagueness, not as a matter of content-based discrimination.

18             Do I have that right, Mr. Fojo?

19             MR. FOJO:  That's correct.  The way it's applied --

20   we obviously contend it shouldn't even matter here, but the

21   way the town exercised its discretion under the ordinance,

22   they did so in an arbitrary fashion and in a discriminatory

23   fashion.

24             Yes, nothing in the ordinance on its face is

25   content-based.  We concede that.  There's obviously no --

1    there are no -- there's never a smoking gun like that in these

2    instances in which the town intended to apply it in a

3    content-based way, but the way it was applied was vague and --

4              THE COURT:  Void for vagueness.

5              MR. FOJO:  Void for vagueness.  That's correct.

6    That is the correct claim.

7              THE COURT:  Okay.  Got you.  Okay.

8              And I guess that's why nobody really got into the

9    whole content-based aspect of the ordinance as applied or

10   basically whatever.  The point is Mr. Fojo's argument is it's

11   void for vagueness as applied.

12             Right, Mr. Fojo?

13             MR. FOJO:  Right.  That's correct.

14             I mean, the same facts existed each time Mr. McCoy

15   approached the board and requests an extension.  There's

16   nothing different.  The town has conceded, and Ms. Marston

17   conceded at her deposition, there's nothing different about

18   either request, and the town purportedly granted an extension.

19             In one instance the following year they denied it,

20   but then they go in and grant him another 30-day extension

21   when again nothing is different about those circumstances.  So

22   they're acting in a very contradictory and arbitrary fashion.

23             THE COURT:  Okay.  Let's stay with this then for a

24   minute because it really might help us streamline some of

25   this.

1          One of the interesting points of your argument, Mr.

2   Fojo, is that -- your point is this ordinance doesn't even

3   apply to my client's trailer, it shouldn't apply at all,

4   right?

5          Now, I'm trying to figure out, can you make an

6   argument that an ordinance that doesn't apply to your client's

7   trailer is void for vagueness?  Do you follow what I'm saying?

8   I mean, can you have it both ways?  Can you say it doesn't

9   apply on the one hand and it's void for vagueness?

10          MR. FOJO:  The town contends that it applies

11   because that's what they were operating under.

12          THE COURT:  Yeah.

13          MR. FOJO:  So that's what I had to challenge.  I

14   had to challenge the town's application of the ordinance.  So

15   that is our claim.

16          I do believe -- I think I can maintain that the

17   ordinance never should have been applied to him, but that is

18   the action that the town took so that is the action I am

19   challenging.

20          And I think that the town for whatever reason

21   relied on this ordinance to exercise some authority to act

22   here, and I think it's perfectly consistent to argue on the

23   one hand that they applied it in a vague manner, but at the

24   same time they never should have used that ordinance in the

25   first place.

1          THE COURT:  Do you have any thought about that at

2     all, Mr. Dietel?

3          MR. DIETEL:  Yes.

4          Your Honor, you're picking up on points that I've

5     been struggling with.

6          I think the arguments made by plaintiff are

7     entirely inconsistent and factually just do not hold any

8     water.

9          You know, we've got an ordinance that on its face

10    applies to storage containers, right?  There's no dispute on

11    that.  He's got a storage container on his property.

12         He applies on three occasions saying that he's

13    using the storage container for storage purposes and that he

14    wants it approved under the storage container ordinance, and

15    he gets permits and signs applications under that ordinance.

16         And then he comes back and he says to the Court,

17    well, that ordinance really shouldn't have applied to me.

18    Disregard all my representations that I made to the planning

19    board.  I really wanted to use this as a sign.  And so, town,

20    you shouldn't have applied this.  Even though I asked you to

21    apply it, you shouldn't have applied it.

22         And then it just totally ignores the fact, okay,

23    well, even if that makes some sense logically, which it

24    doesn't, you have an ordinance that provides for signs to be

25    permitted, and he never applied for a sign permit.

1          I mean, I am perplexed.  I noted that in my reply

2     that logically these arguments do not make sense.

3          THE COURT:  Well, but isn't Mr. Fojo's argument --

4     okay, he's saying, look, I don't think this applies to my

5     client.  It should have been a sign.  However, it was -- Mr.

6     Fojo just said it was applied as a storage container ordinance

7     but they did so in a way -- he's not saying it's

8     viewpoint-based discrimination anymore because neither party

9     briefed it.  What he's saying though is that the way it was

10    applied was unconstitutionally -- rendered it

11    unconstitutionally void for vagueness.  That's Mr. Fojo's

12    argument as far as I can tell.

13          So what's hard to -- what's not to understand?

14          MR. DIETEL:  Well, your Honor, fundamentally -- I

15    mean, what Attorney Fojo is doing is he's coming in here and

16    he's saying, your Honor, I would now like to make an argument

17    but really I don't understand -- my clients did not understand

18    what this permit was all about, because I would like to

19    contend it was really a sign and I can't understand factually

20    how the town applied this to me.

21          Because the question is on a void for vagueness

22    as-applied challenge, would a person of reasonable

23    intelligence have understood how and why it was applied to

24    them.  For the Court to even go down that avenue requiring --

25    I'm not saying the Court is, and I understand the Court is

1    trying to understand the arguments, but it would require you

2    to look past the handwritten representations of Mr. McCoy that

3    he wanted a permit for storage container purposes.  Multiple

4    letters to the town.

5              So how do you now come before the Court and say,

6    yes, I wrote to the town on three occasions and said I wanted

7    this explicitly for storage container purposes, but I didn't

8    understand how it was applied.  I really -- you know, this was

9    confusing to me.  This should have been a sign permit

10    application.

11             That doesn't hold water.  It just doesn't make

12    sense.

13             THE COURT:  All right.  But it doesn't make -- it's

14    not that I dispute that assertion, Mr. Dietel.  It doesn't

15    make sort of sense based on -- I think you're probably right

16    about the fact that it doesn't make a lot of sense based on

17    the facts as we understand them to be or the complaint

18    actually in the case, but I'm going to try to -- I'm trying to

19    analyze Mr. Fojo's approach from a legal perspective.

20             MR. DIETEL:  I understand.  I understand.

21             THE COURT:  I guess your argument on the law is,

22    look, if the test is whether a person would -- you know, would

23    a person be -- would the average reasonable person be able to

24    understand how it was applied to him, I guess your point is,

25    right, that the facts just don't bear that out.  It didn't

 1  seem like there was any --

 2          MR. DIETEL:  I fully understand, your Honor, why

 3  you're going down this path, and I have struggled with it

 4  because I don't understand how you can come to the Court and

 5  say I'm going to bring an as-applied vagueness challenge under

 6  this ordinance which I don't think applies to me.  I struggle

 7  just at a threshold level with that.

 8          But then I look at it on the facts and I look at it

 9  on the standard of a motion for summary judgment, and could a

10  reasonable jury conclude that a person of reasonable

11  intelligence wouldn't have had fair notice here.

12          And we've got three separate engagements with the

13  board of selectmen with three separate handwritten letters

14  requesting this for storage, and in the final minutes the

15  board says, look, we have to keep this man to his word.  He's

16  represented -- and I'm filling in now the blanks of the

17  minutes, but he's represented twice that he needs this because

18  he's using it for storage.  He's disabled.  He wants to get

19  his stuff out of there.  We cut him slack on two prior

20  occasions.  We need to keep this man at his word is what they

21  say, and they deny him on the third go-around.

22          I mean, this is exactly what we want the town to

23  do, right?  They were flexible in their application of the

24  zoning ordinance based on the representations made to them

25  about a good faith desire to use this for storage and to get

1    it unpacked, and then they turn around after the fact on a

2    third denial when it doesn't even say Trump on it anymore and

3    say I don't understand now why it was applied to me in this

4    way.

5            I don't think that's credible, your Honor.

6            THE COURT:  Yeah, but of course the test isn't

7    whether it's credible.  I understand your point.

8            MR. DIETEL:  Right.  It's whether a person of

9    reasonable intelligence would have had fair notice, and I

10   submit he had fair notice at that point.

11           THE COURT:  Tell me, Mr. Fojo --

12           And I promise I will let you guys make your

13   arguments and not just pepper you with questions all the time,

14   but I'm really struggling with this.

15           So, Mr. Fojo, tell me.  If -- let's assume you're

16   right about this and that the storage container ordinance

17   shouldn't apply to Mr. McCoy.  How does that affect your

18   claim?  I mean, if this wasn't a storage container and the

19   board shouldn't have applied the storage container part of the

20   ordinance, what's your theory of liability?  Like, what makes

21   the town's conduct unlawful or unconstitutional?

22           MR. FOJO:  I think it's important to understand

23   that when I'm arguing that the ordinance should not have

24   applied here, I'm not -- it's not like I'm abandoning our

25   claim.  I think -- it supports the notion that the town's

1  application of the ordinance was vague.  You have identical

2  circumstances in which the town applied the ordinance one way

3  and then applied it another way.

4            THE COURT:  To Mr. McCoy?

5            MR. FOJO:  To Mr. McCoy, yes.

6            THE COURT:  The point is to grant him extensions

7  and then not to grant an extension, that's the vagueness?

8            MR. FOJO:  In the first instance -- to apply the

9  ordinance in the first instance.  He testified at his

10 deposition that he was not using the trailer principally for

11 storage.  I understand what he stated at the meetings several

12 years ago, but he wasn't using it principally for storage.

13            By the way, in the final go-around it did say

14 Trump.  It wasn't on the front of the trailer anymore.  It was

15 on the back.  He testified about that at his deposition as

16 well.

17            But to answer your question, Judge.  In applying in

18 the first instance and then granting him an extension that the

19 town concedes it had no authority to provide -- Ms.

20 Marston testified at her deposition that they had no process

21 for an extension under the ordinance.  And then doing that a

22 second time and then denying him a third extension in 2018,

23 but then granting him a 30-day extension in literally the same

24 breath, that is the very definition of vagueness.

25            I'm not abandoning the claim.  I'm merely trying to

1    explain the chronology here.  The ordinance should never have

2    been applied to him in the first instance.  They're applying

3    it and then -- applying it in directly contradictory ways.

4         We cited a case from the Southern District of Ohio

5    in our papers that provides a very similar example of such

6    strict discriminatory enforcement.

7         THE COURT:  Talk to me about that.

8         MR. FOJO:  About the case?

9         THE COURT:  Yes, because my next question for you

10    is going to be -- if this is your argument, and I think I

11    really do have a better handle on it now, It's the idea of

12    allowing the extensions and then declining to do so --

13         MR. FOJO:  Correct.

14         THE COURT:  -- amounted to unconstitutional

15    vagueness.  So I was going to ask you about authority for

16    that, and you're about to tell me about an Ohio case.

17         MR. FOJO:  We cited a case <u>Buckle Up Festival</u>

18    <u>versus City of Cincinnati</u>, it's Southern District of Ohio

19    2018.  The district court there held that there's a municipal

20    ordinance that required an admission tax to be paid to the

21    City of Cincinnati based on -- I'll leave it at that.

22         The ordinance defined admission and that definition

23    contained some discretion that could be exercised by the city,

24    and so the plaintiffs alleged that the defendants didn't

25    require them to pay that admission tax in 2012 for this music

1    festival but then required them to pay the tax the following

2    year for the same music festival, and the Court held that

3    those allegations supported the claim that it was vague and it

4    led to arbitrary and discriminatory enforcement.

5              And I think the way the town acted here, the board

6    acted here, is nearly -- is precisely the same.

7              You take an ordinance that they believed applied.

8    There is some discretion exercised pursuant to the ordinance.

9    They granted him an extension one year.  They did it a second

10   time.  They denied him a third time.  The circumstances that

11   supported each request were exactly the same.  The town

12   conceded that.  Ms. Marston conceded that at her deposition

13   that nothing was different about any of those requests for

14   extension.

15             So we think that that case squarely applies here

16   and supports the void for vagueness claim.

17             THE COURT:  Well, but -- I see.  I don't know.

18             But, I mean, he made specific requests for those

19   extensions based on a disability and the difficulty he was

20   having removing his materials.

21             MR. FOJO:  Right.

22             THE COURT:  So was the town basically bound to

23   extend the permit for the trailer as long as he kept

24   representing that his disability prevented him from removing

25   the stuff from the trailer?  I mean, that doesn't seem like it

1  would make sense.

2          MR. FOJO:  I don't think -- well, there's nothing

3  in the ordinance concerning an extension for -- first of all,

4  there's nothing -- like Ms. Marston said at her deposition,

5  there's no process in the ordinance for an extension.  I think

6  we can all agree on that and so --

7          MR. DIETEL:  We can't, your Honor, all agree to

8  that.

9          MR. FOJO:  Okay.  All right.

10          If you take Mr. McCoy at his word in 2016, 2017,

11  2018, and his representations then, then even if you agree

12  that the town was correct in applying the ordinance, there's

13  no process for an extension under the ordinance and they

14  applied it in a discriminatory fashion in each of those years.

15  So the claim still should prevail here in my opinion based on

16  the Buckle Up Festival case that I explained.

17          THE COURT:  Okay.

18          MR. DIETEL:  Your Honor, if I may, you know, I --

19          THE COURT:  So -- but --

20          Go ahead, Mr. Dietel.

21          MR. DIETEL:  Well, I was going to say that case is

22  not on point and -- you know, I say this with all due respect

23  to Attorney Fojo and to give him some credit, I think he's

24  doing a good job of trying to muddy the waters here, but the

25  fact is that -- I think the Court has to first look at the

1  statute and conclude -- it's not the statute, it's the

2  ordinance, and conclude that it did apply under the facts and

3  circumstances here.  I mean, on its face it applies.  Further,

4  it applies based on the representations Mr. McCoy made.

5           And it all begs the question, how is the town

6  supposed to know that Mr. McCoy really wanted a sign permit

7  when he's come in on multiple occasions and said give me a

8  storage container permit.

9           THE COURT:  You're trying to talk -- Mr. Dietel,

10  you're trying to talk about reality and I'm up in the clouds

11  talking about theory.

12          MR. DIETEL:  Yeah, you know, and it's the facts

13  here at the end of the day.  And I enjoy this back and forth

14  on this but, you know, we can't go past those points.

15          And, you know, at the end of the day this is not a

16  circumstance where -- you know, as your Honor pointed out,

17  this third denial does not occur in a vacuum.  I mean, this

18  occurred after a series of prior permit approvals based on

19  representations and it's part of a chain.

20          And, you know, as an aside, you know, the

21  concessions that Mr. Fojo claims the town made, I just want to

22  be clear we don't agree that those concessions have been made.

23          THE COURT:  Uh-huh.

24          MR. FOJO:  If the ordinance applied, then they

25  should have just denied the first request.

1          MR. DIETEL:  I mean, this is the funniest thing,

2     your Honor.  This is what I -- I don't get it.  I mean, the

3     record if anything -- this whole suit is about an allegation

4     that the town discriminated against Mr. McCoy because he

5     painted this sign -- this storage container Trump.

6          THE COURT:  Which is no longer the suit because --

7          MR. DIETEL:  It's evolved, right?  The arguments

8     have been a moving target.

9          But at the end of the day the record before you, if

10    anything, would support an inference that he was granted

11    preferential treatment under Mr. Fojo's theory.  I mean,

12    Attorney Fojo is coming in and saying the town shouldn't have

13    even granted a single permit extension.  That this was a

14    constitutional injury that it granted permit extensions.

15         THE COURT:  Well, I think his argument is -- I'm

16    not saying I necessarily countenance this.  That's why I spent

17    time trying to understand it.  It's that to grant him this

18    preferential treatment and then withhold it amounts to

19    unconstitutional vagueness.  Not viewpoint discrimination.

20    Unconstitutional vagueness.  There's a difference.

21         MR. DIETEL:  Yes, sir.

22         THE COURT:  Okay.

23         MR. FOJO:  Judge, that was your ruling on the

24    motion for judgment on the pleadings.  That was the portion of

25    the First Amendment claim that survived.  So it's not an

1    evolving lawsuit.  I mean, that is what you -- you believed

2    that that was the only portion of the claim that survived at

3    that point so that is -- and that's what Attorney Dietel

4    challenged in his motion for summary judgment and that's what

5    we responded to.

6            MR. DIETEL:  I think what the Court's ruling said

7    was that the only surviving claim was an as-applied vagueness

8    challenge.

9            MR. FOJO:  Correct.  I'm not disputing that.

10           THE COURT:  That's what he just said, right?

11           MR. FOJO:  Correct.  But it's not an evolving

12    complaint.  It's that's what survived.

13           MR. DIETEL:  Well, my comment previously about

14    these being evolving arguments is that -- the essential

15    allegation in your complaint, Attorney Fojo, was that the only

16    reason for the town denying a permit extension was because it

17    said Trump on the side, and now we're going down a path of

18    saying, well, what really happened is that on the third denial

19    I incurred a constitutional injury because I didn't understand

20    why it was denied, right, the application of it to me on that

21    third occasion.  I didn't have fair notice as to why I was

22    being denied.

23           MR. FOJO:  Well, my client continues to maintain

24    that it was removed because it said Trump, but the surviving

25    portion of that claim is a void for vagueness challenge -- an

1   as-applied vagueness challenge, and that's what we're

2   litigating and disputing right now.

3            THE COURT:  Okay.  Give me a moment here.

4            (Pause)

5            So just articulate for me -- I think you've done

6   this, Mr. Fojo, but just articulate for me.  When we take the

7   expressive content of viewpoint discrimination out of the

8   equation, the vagueness claim is what?  Just in your own

9   words, what is the constitutionally impermissible vagueness of

10  the application of the storage container ordinance?  Is it

11  just that it was allowed and then withheld for reasons that,

12  as Mr. Dietel says, your client couldn't be expected to

13  understand?

14           MR. FOJO:  It's the manner in which they applied

15  it.  They applied it in one way in one year and they applied

16  it in a completely opposite fashion the following year but

17  then granted him a 30-day extension immediately after that.

18           So it's this constantly shifting application of the

19  ordinance based on identical circumstances.  A person of

20  ordinary intelligence could not possibly understand what is

21  driving the town's application of the ordinance in each of

22  those instances, and Ms. Marston conceded at her deposition

23  that they had no reason for why they continued to change their

24  application of the ordinance.  We cited that language in our

25  brief.

1              THE COURT:  But isn't --

2              MR. FOJO:  It's still a mystery to me why they

3    continued to -- they're explaining now that they were being --

4    Attorney Dietel is explaining now that they were being

5    flexible because he was disabled and such.  Again, there's no

6    process in the ordinance that allows them to consider any of

7    those factors.

8              Ms. Marston conceded that there was no basis, there

9    was no rationale for why they granted him -- purportedly

10   granted him an extension one year, denied it the following

11   year, and then granted him a brief extension immediately

12   afterwards so he could remove the trailer.  It's still a

13   mystery to me why they were doing this and why they continued

14   to change their position.

15             THE COURT:  It's difficult for me to comprehend why

16   you would say that the 30-day extension is somehow a chink in

17   their armor.  I mean, what were they supposed to do, go there

18   every day and give him a new citation that it was still on the

19   property?  They gave him time to get it off the property.

20   That can't be part of the claim.

21             MR. FOJO:  I suppose so, but I'm principally not

22   relying on that.  I'm principally relying on the granting of

23   the extension the two prior times and then denying it the

24   third time.

25             MR. DIETEL:  Your Honor, this highlights what's the

1  constitutional injury here.

2          THE COURT:  Yeah.  That's the next question.

3  Right.

4          What is the -- if I accept your -- if I accept your

5  rendition, right, that it was just impermissibly vagueness,

6  vague as applied because of what looks to you like

7  irreconcilable standards or irreconcilable action, right, what

8  is the injury to your client, the constitutional injury, Mr.

9  Fojo?

10         MR. FOJO:  Well, it falls under the First

11 Amendment, is that what you're asking me, or you're asking me

12 what his damages are?

13         THE COURT:  Well, it doesn't fall under the First

14 Amendment.  It's not viewpoint-based.  See, you can't have it

15 both ways.  You can't say it's expressive content and then

16 not.  I mean, so you're saying it's vagueness so that a person

17 wouldn't understand how the law applied to him.  Mr. McCoy in

18 this case.  But let's assume I accept that, that that's a

19 viable argument, even though it would seem to be -- well, I'm

20 not going to go down that path right now.

21         It's an impermissibly vague application of the

22 container ordinance, let's assume you're right about that,

23 what's the constitutional injury to Mr. McCoy?

24         MR. FOJO:  Then it would be a due process claim.

25 You're correct.

1        THE COURT:  Okay.  And what's the injury?  What's

2   been the deprivation that's a constitutional violation?

3        MR. FOJO:  Well, I mean, it's -- I mean, I'm not

4   sure I understand the question, your Honor.  Maybe if --

5        THE COURT:  How was your client --

6        MR. FOJO:  Go ahead.  I'm sorry.

7        THE COURT:  No.  You were about to answer it.  He's

8   been deprived of -- he's been -- I guess the argument is he's

9   been subject to regulations that he -- subject to regulation

10  regarding the disposition of his property that are too vague

11  to be applied in any way that's not arbitrary and

12  inconsistent.

13        I guess that's the claim, Mr. Dietel.  What do you

14  say about that?

15        MR. DIETEL:  I think, your Honor, that you're

16  giving some generous readings to things in the sense I

17  understand the logic that you're following, but I think it

18  gets us off track here.

19        I think the reason why we're all struggling with

20  this is because it doesn't add up.  I mean, we've got a

21  situation where we have the plaintiff arguing that he was not

22  entitled to permit extensions and the town granted him permit

23  extensions, and because they did it twice he now has an

24  entitlement to a third permit extension.  But we're dealing

25  with an as-applied vagueness challenge, so the real question

1   is whether or not he should have reasonably understood why he

2   was denied the third time, and factually -- I keep coming back

3   to the facts here because I think they are controlling.

4           We've got a plain record that explains to him why

5   he was denied and we have a follow-up letter to him explaining

6   to him why he was denied.

7           THE COURT:  Okay.

8           MR. DIETEL:  And we've got this question of, okay,

9   well, if he wasn't entitled to the permit, then what is it

10  that he was -- where's the injury?  I mean, I'm having a hard

11  time articulating it, your Honor, because I just -- maybe it's

12  a shortcoming on my analytical abilities, but I'm not

13  following it.

14          THE COURT:  I get it.

15          All right.  Why don't I just let you make your

16  arguments, and I'll interrupt you when I have questions.

17          MR. DIETEL:  Your Honor, I assume you want me to

18  start as the moving party?

19          THE COURT:  Yep.

20          MR. DIETEL:  Your Honor, I actually don't have a

21  whole lot to say this morning because I think we've briefed

22  this exhaustively.  We've given you a very detailed recitation

23  of the facts, and the summary of the law is better stated in

24  my writings than I can summarize to you orally.

25          However, because I have the opportunity to speak

1    with you about this this morning, I do want to pull back on

2    some of the points that we have just been touching on, and I

3    think your Honor has been probing the areas that I wanted to

4    touch on anyway, and that is fundamentally we're dealing with

5    a discrimination claim.  We're dealing with an allegation that

6    Mr. McCoy was subjected to intentional discrimination because

7    he had a trailer that said Trump on the side of it.  That is

8    something that I think we all agree is what this case turns

9    on.

10          But he bears the burden of both production and

11   persuasion on the elements necessary to satisfy those claims,

12   and I don't think a reasonable jury can look at the facts in

13   front of you, your Honor, and determine -- I'll delve into the

14   specifics, but that there was any discrimination here.  In

15   fact, Mr. McCoy's own declaration in support of summary

16   judgment does not set forth any factual elements to support

17   any finding of any sort of discrimination whatsoever.

18          What the record bears out in black and white based

19   on Mr. McCoy's own representations is that he wanted this as a

20   storage container, he applied for it as a storage container,

21   he was granted approvals while it said Trump on the side of

22   it, and when the big 50-foot side that is promoted in the

23   complaint as the subject of all of this was repainted as a

24   balloon scene, it's only then after that point that he's

25   denied.

1          So, you know, these points all really hone in on

2     the equal protection claim aspect of this, which is I think --

3     you know, you've heard from me extensively now at this point

4     on the vagueness application, what I think of that, so I'll

5     focus in on the equal protection, but are there any facts that

6     he was intentionally treated differently in some

7     discriminatory manner?  The record in front of you does not

8     contain any facts and he's not provided any in his declaration

9     to support that.

10         Was there no rational basis?  There was a clear

11    rational basis.  You've got three requests.  I mean, Mr.

12    Fojo's whole argument is you can't supposedly grant further

13    extensions after one year.  Well, the board had granted two

14    extensions and gives a third.  He's not followed through on

15    his representations.  There's no disputes on these points.

16    We've got a request for admissions and a deposition in front

17    of the Court that establish all of these things definitively.

18         THE COURT:  What if he's right about this -- I

19    don't think he is, but what if he is right about this.  What

20    if he's right about the idea that given that there's no

21    authority under the ordinance for extensions that that makes a

22    difference here, right?

23         MR. DIETEL:  Yes.

24         THE COURT:  Does it make a difference?  I don't

25    think the lack of any black and white, you know, express

1  authority to provide an extension really means that there

2  can't be an extension.  I don't believe that, but assuming

3  he's right about that, what difference does that make?

4          MR. DIETEL:  I think it supports our arguments that

5  he was not discriminated against.  If the town did not have

6  the authority to grant him extensions and it granted him

7  extensions when the storage container said Trump, how can he

8  establish that he was discriminated against?  And we have to

9  have evidence you have intentional discrimination by the town.

10  He's not pled claims against individual selectmen.  It's

11  against the town.  There's nothing in the record, there's

12  nothing in his declaration on those points, and the rational

13  basis here is that the town granted one permit approval, then

14  it granted an extension, then it granted another extension for

15  an ordinance that says twelve months, and at some point you

16  have to say, I'm sorry, we can't grant further extensions on

17  this.

18          You know, heading more granular -- I mean, across

19  the board I think it fails on all of the prongs of an equal

20  protection claim but, you know, I've cited, and I'm sure the

21  Court will take a look at it, the Cordi-Allen decision from

22  the First Circuit.

23          The only thing that was provided in response to

24  summary judgment that's at all responsive to these issues was

25  a collection of pictures of other storage containers in town

1  with no factual detail as to where they are or what the basis

2  is for those being somehow similarly situated.

3          In that Cordi-Allen decision the First Circuit said

4  that, "It is inadequate merely to point to nearby parcels in a

5  vacuum and leave it to the municipality to disprove conclusory

6  allegations that the owners of those parcels are similarly

7  situated."  And that's precisely what he's putting on the town

8  here.

9          But, you know, setting that aside, we've gone the

10  extra step of putting in front of the Court two trailers that

11  I think it's fair for the Court to look at in evaluating

12  whether there was discrimination or not.

13          One is on Mr. McCoy's own property.  He claims he

14  only had to get the trailer off because it said Trump and that

15  that was the only reason.  Well, perhaps the most similarly

16  situated trailer would be the other trailer that was on his

17  property.  We've defined it in our pleadings as the rental

18  container, I believe, and he had another trailer on his

19  property that did not say Trump and was required to be

20  removed.

21          And in the May 2018 board decision where they

22  decided that it was time to finally deny his third extension

23  request, they brought an enforcement action against another

24  set of trailers in town and they required that they come in

25  and get permitted.  And much like they treated Mr. McCoy, they

1    allowed one of those trailers to be permitted and the other

2    two had to go because only one trailer is allowed by the town.

3          I highlight those things because, you know, part of

4    his claims are these allegations that he was treated

5    differently from other people.  I mean, the facts that are in

6    front of the Court don't sustain that in any way.

7          We've gone over our as-applied vagueness challenge.

8    I think a person of reasonable intelligence on this record --

9    the Court has to conclude respectfully that a person of

10   reasonable intelligence would know why it was applied.

11         And I'll touch on our ripeness argument, your

12   Honor, because it was pretty clear.  That's not a throwaway

13   argument on our part and it's not just academic.

14         As we cite in our pleadings, the Second Circuit

15   looked at this question, and it's a different context but I

16   think analogous, in the <u>Murphy</u> case.  They adopted the Supreme

17   Court's Williamson finality standard there, and I think

18   appropriately so.

19         You know, the question with these types of cases

20   is, is the federal district court supposed to sit as basically

21   like a super zoning board.

22         We have a situation where the final decision here

23   resides with the ZBA.  Mr. McCoy could have taken an appeal to

24   the extent he believed he has constitutional injuries and he

25   could have challenged this.

1          And in that <u>Murphy</u> decision I think the Second

2     Circuit touches on two points which I agree with.  Now, maybe

3     you don't have to do that if you suffer some immediate injury

4     by bringing an appeal, but bringing an appeal would have just

5     extended the time that he could have kept the trailer on the

6     property.

7          And the next analysis is would bringing that appeal

8     further define the issues for the Court, and certainly it

9     would.  A ZBA looks at whether these decisions are unlawful or

10    unreasonable, and Mr. McCoy would have had an opportunity to

11    the extent he felt this was an unreasonable application to

12    argue that there.

13         So I think the Court should look at the ripeness

14    analysis that we have if it doesn't grant summary judgment on

15    the other grounds and should consider that.

16         And then we also have a motion to strike, as the

17    Court's aware, which I touch on because it is tied into this

18    and it goes to my points about the declaration provided in

19    support of summary judgment.  That declaration fails on a

20    couple grounds.

21         Number one, it doesn't recite any harassment.  It

22    doesn't recite any personal knowledge for the notion that

23    these trailers are somehow similarly situated.  It just

24    provides a bunch of pictures of trailers.

25         And then on top of that, it was a late disclosure

1    that for the reasons set forth in our motion I think should

2    not be considered by the Court.

3            So to sum up, your Honor, at the end of the day

4    could a reasonable jury find in his favor on these facts?  No.

5    I don't believe so.

6            And I think this case is entirely devoid of merit

7    despite the interesting academic arguments we've had about

8    these questions, and I would ask that summary judgment enter

9    for the town.

10           THE COURT:  Yep.  Talk to me first, Mr. Fojo --

11    let's work backwards.  What about the lateness of the

12    disclosure?  Leaving aside whether that affidavit and the

13    photos create genuine issues of material fact, leaving that

14    aside for the moment, what happened here and why should it be

15    allowed to play out the way it did?

16           MR. FOJO:  In the complaint we alleged, and there's

17    no dispute, that two board members acknowledged and conceded

18    that there were trailers -- unpermitted storage container

19    trailers all over town.  Ms. Marston conceded that at her

20    deposition as well.

21           For whatever reason the town has made it seem

22    throughout this litigation like that wasn't true.  Perhaps I'm

23    naive and my client was naive, but we didn't believe that that

24    would be the position.  We believed we would instead

25    acknowledge the fact that there literally are trailers all

1    over town and that we would just be engaging in these academic

2    arguments as to whether there was a constitutional violation.

3            So my client in April drove around and took

4    pictures of as many of these trailers as he could find, and

5    there were many, many trailers.

6            So it was never -- you know, it was alleged earlier

7    on in this proceeding that the allegation that there were

8    trailers all over town was too generic.  It wasn't generic.

9    It was fatally true.

10           He sent me all these photos and images in April.

11   They make it seem in their motion to strike as if we were

12   sitting on these since the beginning of the case, and that's

13   not true.  I provided the image files, the native files, to

14   Attorney Dietel that contained the metadata which demonstrates

15   when these images came into existence, which was April, and he

16   provided all of these to me in April and May.  There were a

17   lot of images.  It took a while to get through all this and

18   just process them and understand where they came from and

19   where this was, and so we provided them along with our

20   objection to motion for summary judgment.

21           The standard that they are relying on to strike the

22   submission, it doesn't require automatic exclusion and

23   submissions like these are allowed if they're harmless or

24   substantially justified.

25           THE COURT:  I guess I need to understand.

1          MR. FOJO:  Sure.

2          THE COURT:  And I mean this with respect.

3          MR. FOJO:  Of course.

4          THE COURT:  But you're saying it took a long time

5    to go through them.  That's not substantially justified.  My

6    understanding is you haven't even answered interrogatories or

7    document requests in this case, you literally didn't do

8    discovery, and then in response to summary judgment you came

9    up with an affidavit from your client and some photos.

10          That -- look, the bottom line is I'm going to

11   probably consider them because I don't want to just leave it

12   out of the case and make that a ground for some type of even

13   perception that I'm not hospitable to your claim, but I can't

14   imagine why that is viewed as permissible in litigation.  It's

15   just not.

16          MR. FOJO:  The issue here is that they're harmless.

17   The town knew all along based on admissions by their own board

18   members that these trailers were in existence.  We provided

19   every document that was responsive and that we had in our

20   possession.  But for the photographs, every other document was

21   provided and right around the close of discovery.  So we did

22   produce documents.

23          There were only six interrogatories that were

24   proffered.  The information called for by those

25   interrogatories was obtained by Attorney Dietel at Mr. McCoy's

1    deposition.  So he had -- all of the information requested in

2    discovery they had before the close of discovery.

3          The photographs are the only issue.  Their

4    production is harmless because the town knew all along that

5    these trailers were in existence all over town, and Mr. McCoy

6    testified to the existence of these trailers in his deposition

7    which was again taken before the close of discovery.  He

8    identified some of the trailer owners and property addresses

9    in his deposition, and then he alluded to many, many others.

10   Of course he's not going to have the addresses of every one of

11   these trailers off the top of his head or in his memory, and

12   so we followed up with the photographs that he took a little

13   bit before that.

14          THE COURT:  Okay.  All right.  I interrupted you,

15   Mr. Fojo.

16          MR. FOJO:  That's fine.

17          THE COURT:  I want to let you respond to Mr.

18   Dietel's arguments.

19          MR. FOJO:  That's fine.  I appreciate that.

20          Just going back to the -- we talked extensively

21   about the vagueness challenge, and I admittedly got a little

22   confused by your question.

23          A vagueness challenge -- an as-applied vagueness

24   challenge can be made in the context of a First Amendment

25   claim if the allegation is that it infringes or inhibits a

1   freedom of expression, and that's how it was pled here

2   originally.

3          You were asking what is the deprivation.  That

4   would obviously be a due process claim.  We haven't made that

5   here.

6          The claim here is it was applied to him in a vague

7   manner such that he was the only person in town with a trailer

8   with political expression on it who was ordered to remove that

9   trailer.  So that was the end result.  That is the

10   constitutional injury.

11          I'll leave the rest of that claim alone since we

12   spent a lot of time on it earlier.  If you have any other

13   questions, Judge, I would be happy to answer them.

14          As far as the equal protection claim, the relevant

15   comparison points here as per your order on the motion for

16   judgment on the pleadings several months ago are property

17   owners in Pittsfield with unpermitted storage containers on

18   their properties.  We've identified numerous property owners

19   in Pittsfield with unpermitted storage containers on their

20   properties who were treated differently than Mr. McCoy.

21          Again, the town conceded that many of these

22   trailers existed.  Ms. Marston conceded that not only in the

23   2017 -- May 2017 board meeting but at her deposition.  She

24   stated at her deposition she had no reason to dispute what the

25   town's Code Endorsement Officer, Jesse Pacheco, had stated at

1    that same May 2017 meeting.  She conceded that the town never

2    bothered to investigate whether these trailers existed.

3            The town contends that it undertook some

4    enforcement activity concerning three property owners, and it

5    attempts to argue that this constitutes lax enforcement.  That

6    this was essentially -- given the number of trailers -- and

7    they're all over the place.  The photographs demonstrate that.

8    Mr. McCoy's testimony demonstrates that.  The town's own board

9    members' concessions demonstrate that.

10           This was a complete abdication of enforcement.  But

11   for whatever reason, they targeted Mr. McCoy and ordered him

12   to remove his trailer off his property, and his trailer is the

13   only one of all of those trailers that contained any form of

14   political speech on it.

15           Concerning the exhaustion argument, I don't think

16   that applies here.  The rule -- it's clear that the rule on

17   exhaustion of administrative remedies is flexible, but there

18   are exceptions to it.  And one of those is if judicial

19   treatment is more appropriate for the types of claims being

20   alleged, then exhaustion of administrative remedies isn't

21   required.

22           And here this is precisely what the case is.  We've

23   alleged constitutional claims under the cases that we've

24   cited.  For example, Blue Jay Realty Trust versus City of

25   Franklin.  There were constitutional claims alleged.

 1    Administrative -- the exhaustion of administrative remedies

 2    was not required.

 3          The same thing with <u>Olson versus the Town of</u>

 4    <u>Litchfield</u> that we cite in our brief.

 5          They don't want a local town board to be dealing

 6    with constitutional claims.  Those claims are particularly

 7    suited for this Court, not a town board.

 8          And then even if this exhaustion principle or rule

 9    applied here, I think the doctrine of municipal estoppel

10    should prevent the town from asserting that we failed to

11    exhaust those remedies given its conduct in the way it applied

12    the ordinance in many different fashions in many different

13    ways.  We think that that -- and we briefed this extensively

14    in our objection.  I don't think it's necessary to go into

15    every detail and the different elements of how this exception

16    applies, but the bottom line is they deceive Mr. McCoy into

17    acquiescing to these extensions and to accepting these

18    extensions of a storage container permit thinking that that's

19    what he needed, and then at the very end when they gave him 30

20    days to remove the storage container and the trailer from his

21    property, by the time that that extension expired his

22    appellate rights had expired.

23          So we don't believe that -- we believe that the

24    town should be estopped from asserting that he failed to

25    exhaust his administrative remedies even if that doctrine

1    would apply, which again it shouldn't because these are

2    constitutional claims that a court, not a town board, should

3    be dealing with.

4             THE COURT:  Well, I'm not saying the town board

5    should be adjudicating the constitutionality of the ordinance

6    or its application, I'm with you, but you could have certainly

7    done the normal appeals by arguing that, look, these

8    ordinances do not permit the permitting or denial of

9    permitting, whether it's storage containers or signage, based

10   on political viewpoints.  That's an argument that you can

11   clearly say the law doesn't permit that, the town law, right?

12   I mean, there's nothing stopping you from doing that, right?

13            MR. FOJO:  No, but -- well, that's not what we're

14   arguing here.  Again, it's the claim that needs to be

15   exhausted.  That's the point.  We're not alleging he should

16   have been granted another extension or he shouldn't have.

17   That's not what we're alleging.

18            Our allegations here -- it was applied -- it's an

19   applied vagueness challenge and his equal protection rights

20   were violated.  Those aren't the claims he would have been

21   asserting in an appeal at the town level.

22            THE COURT:  Yeah, but what you would be able to say

23   was we -- you know, we appealed these decisions that we say

24   are unlawful and they were resolved in a way that violates my

25   client's, you know, constitutional rights to avoid

1    impermissibly vague laws and equal protection violations,

2    right?  I mean -- I don't know.

3            What about that, Mr. Dietel?

4            MR. DIETEL:  I was going to say the standard of

5    review for the ZBA under New Hampshire law is whether the

6    decision was unlawful or unreasonable.  Attorney Fojo could

7    have come in for Mr. McCoy and said this was an unlawful

8    application of the zoning ordinance or unreasonable because it

9    was being applied solely based on his support of President

10   Trump, and those are precisely the types of things that the

11   ZBA is supposed to adjudicate.

12           But beyond that why I just get fundamentally

13   perplexed is at the time of this denial it doesn't even say

14   Trump so --

15           THE COURT:  But it used to.

16           MR. DIETEL:  The back of it did.

17           THE COURT:  The back of it doesn't matter.  It's

18   not facing the road so I'm not worried about the back of it,

19   but it used to say Trump.  You're making it sound like that

20   couldn't be the basis for the town action, and it certainly

21   could be.

22           MR. DIETEL:  I respectfully disagree, your Honor.

23           He says in paragraph 20 of his complaint, "The

24   court order was based solely on the fact that the trailer

25   depicted Trump in large letters."  So I'll concede he doesn't

1    define a time period, but how do you reconcile that when it

2    gets two approvals when it says Trump and then a denial when

3    it doesn't say Trump?

4            THE COURT:  Well, I mean -- let me make the

5    argument.  We don't like this big sign that says Trump, but

6    he's disabled and he says he's having difficulty.  Let's face

7    it.  Mr. McCoy's course of conduct here didn't appear to be

8    square dealing with the town.  That's a fact, right, you know,

9    extension, extension.  And they might have had it in their

10   thinking that they don't want this big Trump sign.  Okay.  I

11   have no idea if this is true and there's no evidence of it, by

12   the way, none whatsoever, but I want to give him the benefit

13   of his argument that that's what was happening.  So take him

14   at his word.  They didn't want it there because it said Trump,

15   but they gave him an extension because he had a sympathetic

16   reason and they listened to it a couple times.  But finally

17   they stopped believing this sympathetic reason and they said,

18   well, enough with the Trump sign.  Now, it doesn't say Trump

19   anymore, but he put us through that so get rid of your

20   trailer.  I mean, wouldn't that be impermissible?

21           MR. DIETEL:  If their decision was motivated by his

22   expression of political speech and there was something in the

23   record to evidence that, but that's the central point, your

24   Honor.  There's nothing in the record to evidence that and

25   it's contradicted by that sequence of events, right?

1          THE COURT:  Okay.

2          MR. DIETEL:  I mean, at the end of the day here

3    we're dealing with a circumstance where Attorney Fojo is

4    arguing we don't have a right to grant extensions under this,

5    but the town grants him a series of extensions.  Where's the

6    discrimination?

7          And setting that aside, where's the evidence of any

8    intentional discrimination?  I mean, we have an ordinance that

9    says twelve months.  They state in their denial the reasons

10   for why they're denying it, and that's a rational basis right

11   there.

12         And if it fails on any one of the prongs for the

13   equal protection claim, it fails on all of them in the sense

14   that he has to satisfy -- it's his burden to satisfy all of

15   those prongs.

16         THE COURT:  Yep.

17         MR. FOJO:  I think the bottom line on the

18   administrative exhaustion point is that it's a flexible rule.

19   It's not absolute.  He's not required in every instance to

20   appeal it to the town ZBA.  When it involves purely legal

21   issues or constitutional issues, such as the cases that we

22   cited, he has the discretion to pursue those claims, those

23   specific claims in a court of law as opposed to appealing it

24   to the town ZBA.

25         THE COURT:  I've spent too much time on it.  I

1    don't think I'm going to spend a lot of time on the

2    exhaustion, to be honest.

3           Mr. Dietel, one thing I'm surprised at here is that

4    when Mr. Fojo said, well, we're only arguing vagueness only

5    because on a motion for judgment of the pleadings you took

6    away viewpoint-based discrimination, and I thought to myself,

7    no, and then you agreed with him.

8           I'm looking at page 8 of my order, "These

9    allegations, taken as true for the purposes of this motion,

10   support a claim for unconstitutional content (banning

11   unpermitted storage containers with political messages) or

12   viewpoint (banning unpermitted storage containers expressing

13   support for then political candidate Trump) discrimination."

14   I didn't foreclose any -- I didn't foreclose any pursuit of a

15   viewpoint-based claim by Mr. Fojo.

16          Now, I thought he didn't argue it so it was gone,

17   and that's my view of it.  He's arguing vagueness.  But why do

18   you support that reading of the order?

19          MR. DIETEL:  Your Honor, I don't have your order,

20   unfortunately, right in front of me.  I had it in the back of

21   my head that there was specific language that said that the

22   only thing that applied was an as-applied -- the only aspect

23   that survived was an as-applied vagueness challenge.  Maybe

24   I'm wrong on that, your Honor, but it's certainly the only

25   thing that's been argued, and I don't see any basis for

1    viewpoint -- any factual basis for viewpoint discrimination.

2        I'll concede I could be wrong, your Honor.  If

3    you've got it in front of you, you've probably got a better

4    record right now than I --

5        THE COURT:  Can I get someone in -- like, I don't

6    know if Vinny is on this.  Can somebody send me that order?

7    Because I'm lost.

8        THE CLERK:  I can send it to you, Judge.

9        MR. FOJO:  I'll send it.

10        You granted the motion on the overbreadth portion.

11    That's Count 1.

12        THE COURT:  Overbreadth, yeah.

13        MR. FOJO:  Overbreadth.

14        The vagueness portion survived.  I'm just reviewing

15    it right now myself.

16        The issue here is the motion targeted the vagueness

17    issue, and so that's what I was responding to.  The motion for

18    summary judgment that is.

19        THE COURT:  Are you saying that if I -- see, that's

20    the problem with these situations.  There's no clarity on what

21    the claims are.  There's no clarity on anything.  So whatever

22    we do is just -- at the next level people just argue whatever

23    they want like none of this happened, and I get frustrated and

24    tired of that.  It's impossible to have these conversations

25    when we're not even having the same argument about the same

1    claims.

2           Hold on.  Somebody just sent me that.

3           (Pause)

4           Yeah.  So Mr. Fojo was basically saying since you

5    only moved on vagueness, he's only arguing vagueness.

6           I don't want anyone here saying you're not arguing

7    viewpoint because I foreclosed it because I did not foreclose

8    it.  If that's a problem, that's not something I want a remand

9    on from the First Circuit Court of Appeals, all right?  That's

10   the kind of thing I like to avoid, a Court of Appeals judge

11   saying I didn't really understand my case, all right?  That is

12   irksome.

13          So we're basically having a big argument here about

14   a portion of the case that Mr. Fojo is going to argue -- well,

15   I don't know -- that Mr. Fojo is going to argue was the only

16   portion at issue in this motion, which is vagueness, but this

17   is the whole case we're talking about as far as I'm concerned.

18          MR. DIETEL:  Your Honor, I've got here at the start

19   of my memorandum of law, I say, "With respect to Count 1, the

20   Court ruled that McCoy alleged minimally sufficient facts to

21   support a claim that the town applied its ordinance against

22   him in a vague manner.  The Court has accepted as true the

23   allegation that the town required him to remove his storage

24   container because it depicted Trump and that a person of

25   ordinary intelligence would not have fair notice of what was

1    prohibited under the ordinance of what a trailer must look

2    like in order to pass muster under the storage container

3    section of the ordinance."

4            I suppose, reading it as a whole, it was my

5    understanding that what you were finding survived was that its

6    application was -- the only thing that was properly pled was

7    that its application was impermissibly vague.

8            THE COURT:  I completely accept that as your

9    representation, not a correct reading of the order, because,

10   look, the last page of the order says, "For the reasons set

11   forth above, Pittsfield's motion for judgment on the pleadings

12   is granted as to Counts 3, 4, and the overbreadth portion of

13   Count 1, and denied as to the remainder of Count 1 and all of

14   Count 2," right?

15           So the motion was denied as to Count 1, and that

16   included content-based and viewpoint discrimination.

17           Now, the way it was described though in Count 1 is

18   a little bit -- and I think that's -- this probably isn't a

19   problem.  I just want it to be clear for the record, okay?

20   Because the way Count 1 is argued -- I think maybe this is

21   what Mr. Fojo has been saying all along, but he's saying that

22   it is a -- let me pull it up here.  Yeah, he says at paragraph

23   29 of the complaint, "The ordinance as applied by the town is

24   a content-based and viewpoint-based restriction on speech,"

25   okay, "as applied by the town."  He also says -- I think it's

1  paragraph 28, yeah, if I can find it here.

2           MR. FOJO:  I've got 29.

3           THE COURT:  Yeah.  Hold on a minute.

4           (Pause)

5           Okay.  No.  Vinny, that's not what you sent me.

6  I'm looking for the complaint.

7           Oh, I'm sorry, Vinny.  You sent me the right thing.

8  I asked you for the order and that's what you sent.

9           THE CLERK:  Okay.

10          THE COURT:  Hold on a minute.

11          Here it is.  Paragraph 28, "The ordinance as

12 applied by the town is an unconstitutionally vague restriction

13 on expressive activity."

14          That's kind of a hybrid allegation I admit.  I

15 don't even know if it exists under the law.  Mr. Fojo told me

16 it does exist, by the way, a few minutes ago.  That vagueness

17 can be applied as a way to restrict expression.  He did tell

18 me that but, you know, its vagueness -- and I guess that maybe

19 answers my question of Mr. Fojo.  It's that the

20 unconstitutionality is its vagueness and its application here,

21 which Mr. Fojo described as the irreconcilably inconsistent

22 application.

23          MR. FOJO:  That's right.

24          THE COURT:  The damage I guess would be some type

25 of restriction on his expressive activity, his speech.

1          MR. FOJO:  That's correct.

2          Your Honor, you alluded to this in your order on

3    the motion for judgment on the pleadings.  When it does

4    inhibit freedom of expression, the vagueness test is even more

5    stringent.

6          MR. DIETEL:  This goes to my point, your Honor.

7    How is his expression being restricted?

8          THE COURT:  Yeah, that's true.

9          And that's true, Mr. Fojo, because by the time you

10   were ordered to remove the trailer there wasn't a Trump sign

11   anymore.  The back of it doesn't make much difference to me

12   because, you know, he can face any sign he wants toward his

13   house, but that's kind of the -- like, where's the restriction

14   of expression when it wasn't a Trump sign by the time it was

15   ordered moved?

16         MR. FOJO:  It still restricts his expressive

17   activity.  I know you're saying that because it was in the

18   back it doesn't make a difference, but I'm not aware of why

19   that location should matter.

20         THE COURT:  Okay.

21         MR. DIETEL:  Well, it matters factually.  I mean,

22   this all -- this is a very -- I'm glad we're going down this

23   path because it helps clarify some of my thinking, your Honor,

24   and I obviously want a very clear record, but it doesn't

25   excuse the fact that there's no evidence in the record of any

1    discriminatory intent.

2          I mean, where's the discrimination?  There's

3    nothing in his declaration.  There's nothing in anything that

4    actually is credible evidence of any discrimination.  You

5    know, when I asked him, and I provided it in our support, to

6    identify what was the discriminatory action that was taken by

7    the town, he could only identify one thing, and he said that

8    selectmen, three of them, James Allard, Carl Anderson, and a

9    prior one, Larry Konopka, told him that the town had received

10   word of complaints, and I said, is that it, and he said,

11   complaints, complaints, complaints.

12         Selectmen telling him that they received word of

13   complaints, that cannot be the level for a constitutional

14   injury here.  You know, there would have to be something far

15   more than that.

16         THE COURT:  Was it complaints about the content or

17   just complaints about the trailer?

18         MR. DIETEL:  Just vague general complaints about

19   the trailer.

20         THE COURT:  Yeah.  Okay.  Well, the complaint is

21   going to control that.  Okay.

22         Well, look, I've been running you guys all around

23   the field today with my questions.  I think I'm good,

24   actually.

25         I want to give you each a chance though if there's

1    anything else you want to say to me that you haven't been able

2    to say, to do so.

3              We'll start with you, Mr. Dietel.  It's your

4    motion.  Is there anything else you want to say?

5              MR. DIETEL:  Yes, your Honor.  I apologize.  My

6    neighbor is mowing his lawn.  I hope you can hear me.

7              THE COURT:  I can't hear that at all.

8              MR. DIETEL:  Okay.  Great.

9              I just want to highlight, your Honor, that the

10   standard on an equal protection claim is that he's got to

11   provide specific instances where people are similarly situated

12   in all relevant respects.  Providing pictures of trailers in

13   town does not meet that standard.  There's no case law that

14   suggests that meets that standard.  He's got to provide both

15   temporal similarities, he has to provide regulatory

16   similarities, he has to provide factual similarities, and his

17   central allegation that the only reason he was singled out was

18   because of Trump -- well, he was not the only person that was

19   subjected to enforcement.  We provided the Court with evidence

20   of that.  The town even took an individual to court on a

21   storage container permit violation.

22             So, you know, at the end of the day the facts just

23   do not support his claims in any way, and we ask that the

24   Court grant summary judgment.

25             THE COURT:  Got it.

1          Go ahead, Mr. Fojo.

2          MR. FOJO:  Thank you.

3          I'll just -- the only thing I have left to say is

4    I'll respond to Attorney Dietel's final comment.

5          This Court laid out what the relevant comparison

6    points were in its order on the motion for judgment on the

7    pleadings, and that was, again, property owners in Pittsfield

8    with unpermitted storage containers on their property,

9    including trailers.

10         Mr. McCoy identified several such trailers.  The

11   pictures demonstrate many, many such trailers.  It's better to

12   show than tell.  All of those trailers look very similar to

13   Mr. McCoy's trailers, none of them contain expressive activity

14   on them, and the town has conceded that only twelve such

15   trailers were ever granted permits.  Indicating that the

16   remainder of them had no permit.

17         So we've satisfied those comparison points and

18   there's no question here that Mr. McCoy was treated

19   differently than all those other trailer owners.

20         So we are -- I think that there's no dispute really

21   as to any fact here.  The Court has the discretion -- we made

22   this request in our objection.  The Court has the discretion

23   to grant summary judgment for the nonmovant, and I believe,

24   given that there's no dispute of fact as to many of the issues

25   here, that opportunity is available.

1      I have nothing further unless the Court has any

2  questions.

3      THE COURT:  Under your theory -- I want to be clear

4  on this, Mr. Fojo -- there's no genuine disputes of material

5  facts here.  I could grant summary judgment to you.

6      MR. FOJO:  That's correct.  That's the argument I

7  made.

8      THE COURT:  Okay.

9      MR. DIETEL:  Your Honor, for our record, that would

10  require a -- if you were to grant summary judgment in favor of

11  Mr. Fojo, that would be over our objection that there's some

12  discriminatory intent.  We've proved that there is no

13  discriminatory intent.

14      So for the purposes of his motion for summary

15  judgment, there would be a factual dispute.

16      THE COURT:  Okay.  Okay.

17      Well, thank you, gentlemen.  I appreciate your

18  presentations, and I'll get an order out here shortly.

19      Are we scheduled for trial soon?

20      MR. DIETEL:  We're scheduled for the first trial

21  period in November, your Honor, so we have some deadlines

22  coming up.

23      THE COURT:  You'll have an answer from me well in

24  advance of that so you're not caught like, you know, not

25  knowing if there's going to be a trial.  We'll get you an

 1   answer well in advance, okay?

 2              MR. DIETEL:  Thank you, your Honor.

 3              MR. FOJO:  Thank you, your Honor.

 4              THE COURT:  Thank you, counsel.

 5              And thanks to everyone from the town and to Mr.

 6   McCoy for participating.

 7              We're adjourned.

 8              (Conclusion of hearing at 11:25 a.m.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3

4          I, Susan M. Bateman, do hereby certify that the

5    foregoing transcript is a true and accurate transcription of

6    the within proceedings, to the best of my knowledge, skill,

7    ability and belief.

8

9

10   Submitted:  1-28-22          /s/   Susan M. Bateman _____
                                  SUSAN M. BATEMAN, RPR, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25