# United States Court of Appeals
## For the First Circuit

No. 21-1907

JOSEPH MCCOY,

Plaintiff, Appellant,

v.

TOWN OF PITTSFIELD, NH,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Lynch, Circuit Judges.

Leif A. Becker, with whom Becker Legal, PLLC was on brief,
for appellant.
Robert J. Dietel, with whom Keelan B. Forey and Gallagher,
Callahan & Gartrell, P.C. were on brief, for appellee.

February 7, 2023

LYNCH, **Circuit Judge**.  In 2015, Joseph McCoy, a resident of the Town of Pittsfield, New Hampshire (the "Town"), applied for and received a permit to keep a trailer on his property in order to store various belongings and tools, as required by the Town's zoning ordinance (the "Ordinance").  In January 2016, McCoy's son painted the words "TRUMP! USA" and "2016" on the side of the trailer facing New Hampshire Route 107.

Later in 2016 and again in 2017, the Town's Board of Selectmen (the "Board") granted McCoy permit extensions so that he could keep the trailer on his property as he completed home repairs and gradually unloaded the trailer.  In June 2018 -- nearly a year after McCoy's son had repainted the trailer to depict a scene of hot air balloons -- the Board denied McCoy's request for a third extension and required him to remove the trailer from his property.

McCoy sued the Town, alleging that the Ordinance, as applied by the Board, was unconstitutionally vague and violated his First Amendment and equal protection rights.  He now appeals the district court's entry of summary judgment for the Town.  McCoy v. Town of Pittsfield, 565 F. Supp. 3d 125, 146 (D.N.H. 2021).  We affirm.

## I.

## A.

Because the district court granted summary judgment for the Town, we "describe the facts giving rise to this lawsuit in a

light as favorable to [McCoy] as the record will reasonably allow." Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 145 (1st Cir. 2013).

The Town adopted the Ordinance in 1988 and has since amended it various times. Pittsfield, N.H., Zoning Ordinance (Mar. 9, 2021).[1] As relevant here, Article 14 of the Ordinance regulates "storage containers" in order to "promote the general welfare by protecting the aesthetics of the [T]own." Id. art. 14, § 2. A "storage container" is defined as "a truck trailer, box trailer, school bus, manufactured housing unit, or similar mobile container parked continuously for 31 days or more and used principally for storage and not used for any person's residential occupancy or transient lodging." Id. art. 2, § 3 (emphasis omitted). The Ordinance restricts the number and placement of storage containers in various zoning districts, requires permits for storage containers, and provides that storage containers cannot remain "on any one lot during any 15-month period . . . [for] more than 12 months." Id. art. 14, § 3(e) (emphasis omitted).

In early 2014, McCoy moved to the Town. To store his belongings and various tools, he purchased a 52-foot trailer and had it delivered to his property.

---

[1]     The parties have included the March 9, 2021 version of the Ordinance in the record. Neither party contends that this version of the Ordinance differs materially from the versions in effect when McCoy applied for a permit and sought extensions.

In August 2015, the Town's building inspector, Jesse Pacheco, informed McCoy that McCoy needed a storage container permit to keep the trailer on his property.  McCoy applied for and received a permit, which took effect on September 1, 2015.  The permit stated that storage containers "are not allowed on a permanent basis . . . within the Town of Pittsfield" and are permitted for only a "period of one year," and thus that McCoy's trailer "must be removed one year from [September 1, 2015]."

In January 2016, McCoy allowed his son to paint the side of the trailer with the words "TRUMP! USA" and "2016."  The words "TRUMP! USA" were painted in large white letters and were visible from New Hampshire Route 107.  McCoy posted an image of the painted trailer on Facebook.  In August 2016, the Concord Monitor published an article about the trailer, including a photograph of the painted words.

After McCoy's storage container permit expired on September 1, 2016, Pacheco mailed McCoy a notice that the trailer must be removed pursuant to the Ordinance.  McCoy then sent Pacheco a letter requesting a six-month extension because McCoy had "construction going on" including to repair a garage leak that would take "several months to fix."  McCoy explained that he was "disabled, with just one working leg," and that he needed an extension "in order to keep [his] tools and materials inside th[e] trailer while [he] deal[t] with this emergency construction

situation." He promised to "empt[y] and remove[]" the trailer "by the end of April 2017."

On November 15, 2016, the Board unanimously approved McCoy's request. The motion to approve was made by Selectman Carl Anderson. At the time, Anderson, a self-proclaimed "life-long Republican" and "public supporter of President Trump," was aware of the painted words on the trailer, and Anderson later attested that this knowledge "did not factor into [his] deliberations." The Board had received several complaints about unpermitted storage containers in 2016, including one complaint concerning McCoy's trailer, and Anderson later wrote in a letter to McCoy that no complaint mentioned the words painted on the trailer.

In a meeting on May 23, 2017, the Board discussed McCoy's trailer. According to meeting minutes, the Board conferred on whether other trailers were in violation of the Ordinance, with Pacheco noting that it was unclear whether other trailers were "grandfathered or not." The minutes do not include any discussion of the words painted on McCoy's trailer. The Board tabled the matter.

On June 13, 2017, the Board met with McCoy to discuss the trailer. McCoy requested a second extension. According to the meeting minutes, McCoy explained that his "deck[] and porch [were] rotted" and "it [was] taking [him] more time then [sic] expected to do all the repairs needed." McCoy further stated that

he "want[ed] to get rid of" the trailer "but just need[ed] more time to do the work needed on [his] home." There was no discussion at the meeting of the words painted on the trailer. The Board again unanimously approved McCoy's request, granting McCoy a new storage container permit effective for one year starting June 13, 2017.

In July 2017, McCoy allowed his son to repaint the trailer with an image of the Pittsfield hot air balloon rally. The trailer depicted an American flag and hot air balloons where the words "TRUMP! USA" and "2016" previously had been.

On May 22, 2018, the Board wrote to McCoy to remind him that the latest permit would expire in June 2018 and that the trailer must be removed at that time. In response, McCoy mailed a letter to the Board requesting a third extension. He explained that emptying the trailer was "not an easy task" because he was disabled and had brought a "huge ammount [sic] of belongings" when he moved to the Town. He did not mention the words that were previously painted on the trailer.

On June 12, 2018, the Board unanimously denied McCoy's request for a third extension. The Board discussed McCoy's prior representations to the Board that he would remove the trailer, and one selectman stated, "we need to keep [McCoy] at his word." The meeting minutes do not report any discussion of the previously painted words. During the June 12 meeting, the Board considered

complaints regarding three other unpermitted storage containers and agreed to send a notice of violation to the owner of those storage containers.  Since then, the Town has taken enforcement action against several other unpermitted storage containers.

A letter sent to McCoy on June 13, 2018, explained that "[w]hile [the Board] note[d] the personal circumstances that ha[d] caused delay, the Board ha[d] to balance the terms of the zoning ordinance with [McCoy's] request."  Pacheco further informed McCoy that the decision to deny the third extension was "due to complaints."

The Board gave McCoy 30 days to remove the trailer.  In July 2018, McCoy sold the trailer and removed it from his property.  The Town later confirmed that McCoy had removed the trailer, but did not impose any other penalties against McCoy.

**B.**

On March 20, 2020, McCoy sued the Town in the U.S. District Court for the District of New Hampshire, invoking 42 U.S.C. § 1983.  In Count I of his complaint, McCoy alleged that the Ordinance, "as applied by the Town," was (1) an "unconstitutionally overbroad restriction on expressive activity," (2) an "unconstitutionally vague restriction on expressive activity," and (3) a "content-based and viewpoint-based restriction on speech."  In Count II, McCoy claimed that the Ordinance, "as applied by the Town," violated the Equal Protection

Clause of the Fourteenth Amendment because the Town selectively enforced the Ordinance against owners of storage containers that display political speech.

The Town moved for judgment on the pleadings on all counts. The district court granted the motion in part and denied it in part. McCoy v. Town of Pittsfield, No. 20-cv-362, 2020 WL 7321522, at *8 (D.N.H. Dec. 10, 2020). With respect to Count I, the district court dismissed McCoy's First Amendment overbreadth claim[2] but allowed his other claims to proceed, stating that McCoy's "complaint contains enough facts that, when construed in his favor, support the inference that the Town . . . applied the [O]rdinance against him in a way that discriminates against either the content or viewpoint of his speech, and that the Town's application of the [O]rdinance was unconstitutionally vague." Id. at *1. The district court also allowed Count II to proceed, holding that McCoy pleaded "sufficient facts to satisfy . . . his 'class of one' equal protection claim." Id.

After discovery, the Town moved for summary judgment on "both counts." The Town recounted that the district court had denied the Town's motion for judgment on the pleadings with respect to the claims of "unconstitutional content or viewpoint

---

[2] McCoy does not pursue his overbreadth claim on appeal. Nor does he pursue his state-law claims for intentional and negligent infliction of emotional distress, which the district court also dismissed. See McCoy, 2020 WL 7321522, at *8.

discrimination," vagueness, and equal protection violations.  But the Town's motion contained legal argument related only to the vagueness and equal protection claims, not the claim of content or viewpoint discrimination.[3]  McCoy's objection to the summary judgment motion likewise discussed the vagueness and equal protection claims but did not address the claim of content or viewpoint discrimination.  McCoy also requested "summary judgment on Counts I and II in [his] favor."

The district court held a summary judgment motion hearing on September 17, 2021.  In addition to hearing argument on the vagueness and equal protection claims, the district court questioned the parties on the extent to which the claim of content or viewpoint discrimination had been preserved.  The district judge noted that "[n]either of [the parties] really engaged that [claim] in the summary judgment papers" and asked whether Count I now encompassed only the vagueness claim, "not . . . [the] content-based discrimination [claim]."  McCoy's attorney responded, "[t]hat's correct."  Both McCoy's attorney and the Town's attorney stated their erroneous belief that the vagueness claim was the sole portion of Count I that had survived judgment on the pleadings.  The district judge then reminded the parties that he

---

[3]    The Town also argued that McCoy failed to exhaust his administrative remedies by not appealing the Board's decision to remove his trailer to the Town's zoning board of adjustment.

had not "foreclose[d] any pursuit of a [content-based or] viewpoint-based claim" and stated the following: "I don't want anyone here saying you're not arguing viewpoint because I foreclosed it[,] because I did not foreclose it. . . . [T]his is the whole case we're talking about as far as I'm concerned." Neither attorney disagreed with this statement, and they proceeded to discuss the extent to which the Town "restrict[ed] [McCoy's] expressive activity." Throughout the motion hearing, the attorneys argued in depth about whether the Board applied the Ordinance discriminatorily based on McCoy's political speech.

On October 6, 2021, the district court granted the Town's motion for summary judgment. McCoy, 565 F. Supp. 3d at 129. The court first rejected McCoy's claim of content or viewpoint discrimination, noting that McCoy failed to provide sufficient evidence that the Town enforced the Ordinance against him due to the political content or pro-Trump viewpoint displayed on the trailer. See id. at 137-39. Although McCoy argued that he "did not raise content or viewpoint discrimination in his summary judgment briefing because the Town's motion did not explicitly address this claim," the court found that "McCoy was on notice that the Town was seeking summary judgment on all remaining claims" and that McCoy "had ample opportunity to present [evidence supporting this claim] and failed to do so." Id. at 137 n.20. Next, the district court rejected McCoy's as-applied vagueness

claim, holding that McCoy had notice that his storage container permit would expire and that he would not receive extensions in perpetuity.  See id. at 139-42.  Finally, the court rejected McCoy's equal protection claim, finding that McCoy had failed to offer trialworthy evidence that the Town had intentionally treated him differently from similarly situated individuals.  See id. at 142-46.[4]

## II.

We review the district court's entry of summary judgment de novo.  Cruz v. Mattis, 861 F.3d 22, 24 (1st Cir. 2017).  Summary judgment is appropriate where the record, viewed in the light most favorable to the nonmoving party, discloses "no genuine dispute as to any material fact" and demonstrates that "the movant is entitled to judgment as a matter of law."  Staples v. Gerry, 923 F.3d 7, 12 (1st Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).

McCoy raises three arguments on appeal.  First, noting that neither party discussed the claim of content or viewpoint discrimination in the summary judgment briefing, McCoy contends that the district court erred in granting summary judgment on that claim without providing adequate notice that it would do so.  He also challenges the district court's adverse judgment on that claim

---

[4] Because it rejected McCoy's claims on the merits, the district court declined to adjudicate the Town's administrative exhaustion argument.  McCoy, 565 F. Supp. 3d at 146.  The Town does not pursue this argument on appeal.

on the merits.  Second, McCoy argues that his equal protection claim should have survived summary judgment.  Finally, McCoy maintains that the district court erred in granting summary judgment on his as-applied vagueness claim.  We address each argument in turn.

**A.**

McCoy first argues that the district court failed to provide adequate notice that it would reach McCoy's claim of content or viewpoint discrimination at summary judgment.  We disagree, finding that the district court provided the requisite notice.  We also affirm the district court's entry of summary judgment on this claim.

**1.**

Under Federal Rule of Civil Procedure 56(f), a district court may grant a motion for summary judgment "on grounds not raised by a party," but may do so only "[a]fter giving notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f)(2).  This "power should be exercised sparingly and 'with great circumspection.'"  Chung v. StudentCity.com, Inc., 854 F.3d 97, 103 (1st Cir. 2017) (quoting Stella v. Town of Tewksbury, 4 F.3d 53, 55 (1st Cir. 1993)).  Our review remains de novo.  Id.

A district court must meet two criteria before entering summary judgment sua sponte: (1) "discovery must be 'sufficiently advanced' to afford the parties 'a reasonable opportunity to glean

the material facts'"; and (2) "the 'targeted party' must have been given 'notice and a chance to present its evidence on the essential elements of the claim or defense.'"  Id. (quoting Berkovitz v. Home Box Off., Inc., 89 F.3d 24, 29 (1st Cir. 1996)).

     Here, the Town moved for summary judgment at the close of discovery, and McCoy "does not claim that he did not have a reasonable opportunity for discovery."  Block Island Fishing, Inc. v. Rogers, 844 F.3d 358, 363 (1st Cir. 2016).  Rather, McCoy depends on the second criterion, arguing that the district court failed to provide adequate notice and opportunity to respond. "Notice, in this context, has two aspects: the summary judgment target is entitled to know both the grounds that the district court will consider and the point at which her obligation to bring forth evidence supporting the elements of her claim accrues."  Id. (quoting Rogan v. Menino, 175 F.3d 75, 79 (1st Cir. 1999)).

     The district court provided adequate notice that it would reach the claim of content or viewpoint discrimination on summary judgment.[5]  During the September 17, 2021 hearing, the district judge carefully reminded the parties that this claim had survived judgment on the pleadings, noting that any belief to the contrary was "not a correct reading of the order."  Further, the

---

[5]     We bypass the question of whether McCoy's attorney abandoned this claim by representing to the district court that Count I was proceeding solely on the basis of the as-applied vagueness claim.

district judge stated: "I don't want anyone here saying you're not arguing viewpoint because I foreclosed it[,] because I did not foreclose it. . . . [T]his is the whole case we're talking about as far as I'm concerned."  McCoy's attorney expressed no misgivings about this statement during the hearing, and he neither sought a continuance nor asked for an opportunity to file supplemental affidavits and/or briefs, instead merely electing to continue discussing the extent to which the Town "restrict[ed] [McCoy's] expressive activity."  Nor did McCoy request to conduct additional briefing on the claim of content or viewpoint discrimination during the nineteen-day period between the hearing and the district court's issuance of the summary judgment order on October 6, 2021.  While a district court's power to enter summary judgment sua sponte "should be exercised sparingly," Chung, 854 F.3d at 103, the court here provided ample notice that all portions of Count I and Count II would be considered on summary judgment.

**2.**

Having found that the district court appropriately reached the claim of content or viewpoint discrimination, we now analyze that claim on the merits.  We affirm the district court's entry of summary judgment.

The First Amendment, which applies to the states through the Fourteenth Amendment, prohibits the enactment of any "law . . . abridging the freedom of speech."  U.S. Const.

amend. I.   McCoy argues that the Ordinance, as applied to his trailer, was a content-based and viewpoint-based restriction on his speech.

A restriction that targets speech is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed," City of Austin v. Reagan Nat'l Advert. of Austin, LLC, 142 S. Ct. 1464, 1471 (2022) (quoting Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015)), and viewpoint-based if it "targets not subject matter, but particular views taken by speakers on a subject," Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 829 (1995).  Such content-based and viewpoint-based restrictions are subject to strict scrutiny, see McCullen v. Coakley, 573 U.S. 464, 478 (2014), "which requires the government to demonstrate that the restriction advances a 'compelling interest' and is 'narrowly tailored to achieve that interest,'" Signs for Jesus v. Town of Pembroke, 977 F.3d 93, 101 (1st Cir. 2020) (quoting Reed, 576 U.S. at 171).  In contrast, content-neutral restrictions, which "serve[] purposes unrelated to the content of expression," are subject to intermediate scrutiny, which requires (in the context of time, place, and manner restrictions) that the restrictions be "narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication of the information."  Id.

(alteration in original) (quoting Ward v. Rock Against Racism, 491
U.S. 781, 791 (1989)).

McCoy claims that "[t]he Ordinance, as applied by the
Town, is a content-based and viewpoint-based restriction on
speech." (Emphasis added). We disagree. "To show that a facially
content-neutral [restriction] is subject to strict scrutiny, the
plaintiff must show not only that the restriction distinguishes
between speakers, but also that it 'reflects a content
preference.'" Signs for Jesus, 977 F.3d at 101 (quoting Reed, 576
U.S. at 170). A facially content-neutral restriction may be
treated as content-based if it cannot be "justified without
reference to the content of the regulated speech" or was "adopted
by the government 'because of the disagreement with the message
[the speech] conveys.'" Reed, 576 U.S. at 164 (alteration in
original) (quoting Ward, 491 U.S. at 791); see also City of Austin,
142 S. Ct. at 1475. McCoy produces no evidence -- and we discern
none -- that the application of the Ordinance to his trailer could
not be justified without reference to the painted words, or that
the Ordinance was adopted as a "pretext" to regulate political or
Republican views. Signs for Jesus, 977 F.3d at 106. Accordingly,
the Ordinance was not a content-based restriction as applied to
McCoy's trailer. And McCoy has not argued (either to the district
court or on appeal) that the Ordinance, if it is a content-neutral

speech restriction as applied to him, is subject to, let alone fails, intermediate scrutiny.

We recognize that McCoy's as-applied challenge might be "of a different sort": that the Ordinance "itself is neutral and constitutional in all fact situations, but that it has been enforced selectively in a [content or] viewpoint discriminatory way." McGuire v. Reilly (McGuire II), 386 F.3d 45, 61 (1st Cir. 2004); see Hoye v. City of Oakland, 653 F.3d 835, 855 (9th Cir. 2011) (noting that such a claim is "essentially a selective enforcement claim" that substitutes "speech content" for "one of the more familiar protected classes"); see also McCullen, 573 U.S. at 484; Cutting v. City of Portland, 802 F.3d 79, 85 (1st Cir. 2015). To mount this type of challenge, McCoy must show a "pattern of unlawful favoritism." McGuire II, 386 F.3d at 64 (quoting Thomas v. Chi. Park Dist., 534 U.S. 316, 325 (2002)); see also Hoye, 653 F.3d at 855 ("[A] plaintiff must show that a municipality's content-discriminatory enforcement of an ordinance is the result of an intentional policy or practice.").

McCoy's claim fails under this framework too. McCoy's initial storage container permit issued before McCoy's son painted the trailer, and the Board granted two extensions while the "TRUMP! USA" message remained. Indeed, when the Board eventually denied a third extension, this message had been painted over with a

nonpolitical depiction of the Pittsfield balloon rally.[6] As the district court noted, McCoy offers no evidence that the Board "held animus but did not act on it during the time the trailer expressed support for Trump, waited until the trailer no longer showed support for Trump, and only then decided to punish McCoy for his prior support." McCoy, 565 F. Supp. 3d at 138. Further, according to various meeting minutes, the Board never mentioned McCoy's expressive content in any of its discussions about the trailer. And although the Board apparently received complaints about McCoy's trailer (along with other trailers), McCoy produces no evidence that those complaints concerned the political view he expressed. Indeed, similar complaints led the Board to enforce the Ordinance against other trailers that did not include expressive content. On this record, no rational jury could find that the Town enforced the Ordinance in a content or viewpoint discriminatory manner.

---

[6]      During his deposition, McCoy testified that even after his son painted over the words "TRUMP! USA" and "2016," the back doors of the trailer continued to have graffiti displaying the words "TRUMP MAKE AMERICA GREAT AGAIN!" But as the district court noted, McCoy's complaint made no mention of the trailer's back doors, instead focusing on the side of the trailer that said "TRUMP! USA" and "2016" and that was featured in the Concord Monitor article. McCoy, 565 F. Supp. 3d at 138 n.21. In any event, McCoy provides no evidence that the Board discriminated against him based on the graffiti on the back doors.

**B.**

McCoy next argues that the Town's application of the Ordinance against him violated his equal protection rights under the Fourteenth Amendment.  McCoy pursues two types of equal protection claims: a "class-of-one" claim[7] and a claim of selective enforcement based on his speech.  We address each claim in turn.

**1.**

The Supreme Court has recognized that a plaintiff can bring an equal protection claim as a "class of one" even where the plaintiff does "not allege membership in a class or group." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).  Under the class-of-one framework, the plaintiff must show that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id.

Class-of-one plaintiffs bear the burden of identifying comparators who are "similarly situated in all respects relevant to the challenged government action."  Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 640 (1st Cir. 2013).  Plaintiffs must show an "extremely high degree of similarity" between themselves and those comparators.  Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st

---

[7]    Although McCoy did not articulate a class-of-one equal protection claim in his complaint, the district court evaluated his claim through that framework and McCoy pursues it on appeal.

Cir. 2007) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159
(2d Cir. 2006)).  This requirement "must be enforced with
particular rigor in the land-use context because zoning decisions
'will often, perhaps almost always, treat one landowner
differently from another.'"  Id. (quoting Olech, 528 U.S. at 565
(Breyer, J., concurring)).  "It is inadequate merely to point to
nearby parcels in a vacuum and leave it to the municipality to
disprove conclusory allegations that the owners of those parcels
are similarly situated."  Id.

     McCoy's class-of-one equal protection claim fails
because he has failed to identify similarly situated comparators.
McCoy has produced photographs of various trailers in Pittsfield
that he contends "were not permitted and did not contain expressive
content, and yet were allowed to remain."  But McCoy fails to
provide evidence that any of those trailers actually fell within
the ambit of the Ordinance.  For example, he offers no evidence
that any of the photographed trailers were "parked continuously
for 31 days or more," "used principally for storage," and "not
used for any person's residential occupancy or transient lodging,"
all of which are prerequisites to the Ordinance's application.
Pittsfield, N.H., Zoning Ordinance (Mar. 9, 2021), art. 2, § 3.
Further, he produces no evidence that any of these trailers are
not grandfathered.  See id. art. 4, § 1(a) (providing that the
Ordinance "shall not apply to existing structures").  Indeed, in

one Board meeting, Pacheco noted that it was unclear whether other trailers in Pittsfield were "grandfathered or not."[8]   McCoy has merely "point[ed] to nearby [trailers] in a vacuum" and made conclusory allegations that they were similarly situated to his trailer.  Cordi-Allen, 494 F.3d at 251.  He thus has failed to meet his burden under the "similarly situated" requirement, so his class-of-one claim fails.

**2.**

In addition to McCoy's class-of-one equal protection claim, which does not depend on his ability to prove that he was targeted due to his speech, see Cobb v. Pozzi, 363 F.3d 89, 109-10 (2d Cir. 2004), McCoy argues that the Town has "single[d] [him] out" for enforcement due to his political speech.  This allegation amounts to a claim of selective enforcement under the Equal Protection Clause.

To establish a claim of selective treatment, a plaintiff must show that (1) the plaintiff, "compared with others similarly situated, . . . was selectively treated"; and (2) such selective treatment was "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise

---

[8]     The Ordinance was adopted in 1988, and its provisions regulating storage containers were added in 1997 and later amended in 2016.   McCoy makes no attempt to show that any of the photographed trailers were not already present prior to these changes in the law.

of constitutional rights, or malicious or bad faith intent to injure a person." Barrington Cove Ltd. v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (emphases omitted) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995)). McCoy argues that the Town selectively enforced the Ordinance against him based on an "intent to inhibit or punish the exercise" of his First Amendment rights.[9]  Id.

  McCoy's selective enforcement equal protection claim fails for reasons we have already explained above. First, as we found in rejecting McCoy's class-of-one equal protection claim, McCoy has not provided sufficient evidence of "similarly situated" comparators.  See, e.g., Signs for Jesus, 977 F.3d at 113-14 (rejecting, due to failure to identify any similarly situated comparator, an equal protection claim based on purported classifications affecting fundamental rights).  Second, as we found in rejecting McCoy's as-applied First Amendment claim, McCoy has failed to produce evidence of any intent by the Town to discriminate against him based on his speech. See, e.g., Wayte v. United States, 470 U.S. 598, 608-10 (1985) (rejecting selective enforcement claim due to failure to prove that the government intended to prosecute discriminatorily based on speech); Cobb, 363

---

  [9] McCoy does not allege that the Town acted with a "malicious or bad faith intent to injure" him.  Barrington Cove, 246 F.3d at 7 (quoting Rubinovitz, 60 F.3d at 910).

F.3d at 110 (rejecting selective enforcement claim for same reason that First Amendment retaliation claim was rejected). Indeed, as this court has previously noted, there is substantial overlap between a selective enforcement claim under the Equal Protection Clause and a claim of selective content or viewpoint discrimination under the First Amendment. See McGuire II, 386 F.3d at 61-64; see also Hoye, 653 F.3d at 854-56; McGuire v. Reilly (McGuire I), 260 F.3d 36, 49 (1st Cir. 2001) ("[T]he equal protection interests involved in the differential treatment of speech are inextricably intertwined with First Amendment concerns . . . ."). We need not discuss here the extent to which the two claims may differ.

## c.

Finally, McCoy argues that the Ordinance, as applied by the Town, is unconstitutionally vague.[10] We disagree.

An enactment is impermissibly vague, thus violating due process, if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." Frese v. Formella, 53 F.4th 1, 6 (1st Cir. 2022) (quoting United States v. Williams, 553 U.S. 285, 304 (2008)); see Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 93 (1st Cir. 2004). In an as-applied vagueness challenge, we consider only the "particular

---

[10]    McCoy does not argue that the Ordinance is vague on its face.

facts at issue" because a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Holder v. Humanitarian L. Project, 561 U.S. 1, 18-19 (2010) (quoting Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc., 455 U.S. 489, 495 (1982)). Further, "enactments with civil rather than criminal penalties" are held to a less exacting vagueness standard "because the consequences of imprecision are qualitatively less severe." Village of Hoffman Estates, 455 U.S. at 498-99.

McCoy had ample notice that the Ordinance would apply to him. Indeed, he himself applied for a storage container permit under the Ordinance and represented to the Board, on multiple occasions, that he was using his trailer for storage.[11] See United States v. Zhen Zhou Wu, 711 F.3d 1, 15 (1st Cir. 2013) (noting

---

[11] McCoy argues that after his son painted the trailer with the words "TRUMP! USA" and "2016," the trailer was being used "principally as a sign" rather than for storage, and thus that the Ordinance should not have applied to him at all. At oral argument, McCoy's counsel explained that this argument was made "in service" of McCoy's federal vagueness claim, not as a separate state-law claim to be resolved under this court's supplemental jurisdiction. But as the district court noted, it is "unclear how [this argument] would affect McCoy's vagueness claim." McCoy, 565 F. Supp. 3d at 139-40. Regardless of whether McCoy's trailer could have qualified as a sign under Article 9 of the Ordinance, see Pittsfield, N.H., Zoning Ordinance (Mar. 9, 2021), art. 9 (listing permitting conditions for "outdoor signs"), McCoy was on notice that the Town would treat the trailer as a storage container because he continuously applied for permits and extensions under Article 14 of the Ordinance, telling the Board that his trailer was being used for storage and never mentioning its expressive content.

that in an as-applied vagueness challenge, the court need only determine whether plaintiffs "in fact had fair notice" that their conduct was proscribed (quoting United States v. Hsu, 364 F.3d 192, 196 (4th Cir. 2004))). He nowhere establishes in the record that his trailer was used principally for political speech (or that he represented as much to the Town), as would be required for him to argue that the Ordinance is vague as applied to a trailer used primarily for political speech.

Further, the Ordinance is not "so standardless that it authorizes or encourages seriously discriminatory enforcement." Williams, 553 U.S. at 304. The Ordinance allows Town officials to require permits only for those storage containers that are "parked continuously for 31 days or more and used principally for storage and not used for any person's residential occupancy or transient lodging." Pittsfield, N.H., Zoning Ordinance (Mar. 9, 2021), art. 2, § 3. The Town Administrator explained that the Board knew McCoy's trailer was a non-grandfathered storage container "based on visual inspection [by Pacheco], permit applications and correspondence received from Mr. McCoy, and public testimony from Mr. McCoy." The Town conveyed clear and acceptable reasons for requiring McCoy to have a permit, and has enforced the Ordinance against various other trailers for similar reasons.

McCoy contends that the Board's decision to grant two permit extensions, but then deny the third, amounted to "arbitrary

enforcement" of the Ordinance.  He argues that the Board lacked
authority to grant extensions in the first place, rendering the
Ordinance vague because the Board could "create[] rationales and
bases for whether to grant or deny . . . extension request[s] out
of whole cloth."  But even if the vagueness doctrine applies in
this context -- in which McCoy challenges not the Ordinance's
application to him, but rather the Town's method of
enforcement -- McCoy received ample notice of how the Town would
treat his extension requests.  McCoy himself requested each
extension,[12] and he benefitted from the grant of two extensions.
The new permit granted on June 13, 2017, clearly stated that the
trailer "must be removed one year" later, and McCoy repeatedly
told the Board that he intended to remove the trailer following
each extension.  Even when asking for a third extension, McCoy
stated that he planned to continue emptying the trailer so he could
eventually remove it.  Regardless of whether the Town had authority
to grant extensions in the first place, McCoy was on notice that
he would not receive extensions in perpetuity.

**III.**

        For the foregoing reasons, the judgment of the district
court is affirmed.

---

[12]     Indeed, the fact that McCoy asked for serial extensions
demonstrates that he believed the Town had the authority to issue
them at the time, which undercuts his present argument to the
contrary.